**FOR PUBLICATION**

**UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT**

---

FRANCIS X FLEMING, JR.,
*Plaintiff-Appellant*,

v.

THE CHARLES SCHWAB
CORPORATION; CHARLES SCHWAB
& CO., INC.; WALTER W.
BETTINGER II; UBS SECURITIES
LLC,
*Defendants-Appellees.*

No. 16-15179

D.C. No.
3:15-cv-02945-RS

---

LOUIS LIM, Individually And On
Behalf Of All Others Similarly
Situated,
*Plaintiff-Appellant*,

v.

CHARLES SCHWAB & CO., INC.,
*Defendant-Appellee.*

No. 16-15189

D.C. No.
3:15-cv-02074-RS

OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted October 18, 2017
San Francisco, California

Filed December 29, 2017

Before:  Sandra S. Ikuta and Andrew D. Hurwitz, Circuit
Judges, and Donald W. Molloy,[*] District Judge.

Opinion by Judge Hurwitz

## SUMMARY[**]

### Jurisdiction / Securities Litigation Uniform Standards Act

The panel affirmed the district court's dismissal of
putative class actions because the Securities Litigation
Uniform Standards Act ("SLUSA") deprived the court of
subject matter jurisdiction.

Plaintiffs are Charles Schwab Corporation retail
customers who alleged a breach by a securities dealer of the

---

[*] The Honorable Donald W. Molloy, United States District Judge for
the District of Montana, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

"duty of best execution" in completing trades.  Schwab is a financial services firm that trades securities for its clients, and in 2004 it agreed to route 95% of its "non-directed trades" to UBS Securities LLC.  Plaintiffs alleged that Schwab breached various state-law duties by routing trades to USB.

SLUSA bars jurisdiction over any claim that could give rise to liability under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, even if the alleged conduct also gives rise to a state-law cause of action.

The panel held that the plaintiffs had Article III standing.  The panel held that the complaints alleged both particularized and concrete injuries – higher execution prices than might have occurred with a different market center, and thus the complaints alleged the required injury in fact.

The panel held that plaintiffs' claims were barred by SLUSA. Specifically, the panel held that all of plaintiffs' pleaded causes of action alleged deceptive conduct actionable under federal securities law.  The panel also held that the challenged conduct occurred "in connection with the purchase or sale of" a security.  The panel further held that plaintiff Francis Fleming's claims against UBS pleaded a "manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security," and was SLUSA-barred.

**COUNSEL**

Andrew Love (argued) and Susan K. Alexander, Robbins Geller Rudman & Dowd LLP, San Francisco, California; Juan Carlos Sanchez, Ashley M. Price, Benny C. Goodman III, and Andrew J. Brown, Robbins Geller Rudman & Dowd LLP, San Diego, California; Gerald L. Rutledge and Alfred G. Yates Jr., Law Office of Alfred G. Yates Jr. P.C., Pittsburgh, Pennsylvania; for Plaintiff-Appellant Francis X Fleming Jr.

Leslie E. Hurst (argued), Paula R. Brown, Thomas J. O'Reardon II, and Timothy G. Blood, Blood Hurst & O'Reardon LLP, San Diego, California; Leonid Kandinov, Ashley R. Rifkin, Kevin A. Seely, and Brian J. Robbins, Robbins Arroyo LLP, San Diego, California; David J. Harris Jr., William R. Restis, and Jeffrey R. Krinks, Finkelstein & Krinsk LLP, San Diego, California; for Plaintiff-Appellant Louis Lim.

David C. Bohan (argued), Patrick M. Smith, Peter G. Wilson, and Allison M. Freedman, Katten Muchin Rosenman LLP, Chicago, Illinois, for Defendant-Appellee UBS Securities LLC.

Gilbert R. Serota (argued) and Erica M. Connolly, Arnold & Porter LLP, San Francisco, California; Lowell Haky and Mai Klaassen, Charles Schwab & Co. Inc., San Francisco, California; for Defendants-Appellees The Charles Schwab Corp., Charles Schwab & Co. Inc., and Walter W. Bettinger II.

**OPINION**

HURWITZ, Circuit Judge:

The issue for decision is whether the Securities Litigation Uniform Standards Act ("SLUSA"), Pub L. 105-353, 112 Stat. 3227, deprived the district court of subject matter jurisdiction over complaints alleging a breach by a securities dealer of the "duty of best execution" in completing trades. The district court dismissed the appellants' complaints pursuant to SLUSA. We affirm.

## I.  Background

Charles Schwab Corporation is a financial services firm that trades securities for its clients. In 2004, Schwab agreed to route 95% of its "non-directed trades" (trades for which clients have not selected another trading venue) to UBS Securities LLC ("UBS").

Louis Lim and Charles Fleming ("Plaintiffs") are Schwab retail customers. Their Account Agreements state that "Schwab routes equity and options orders for execution to" UBS and note that "Schwab may receive remuneration . . . from a market center to which orders are routed." Nonetheless, Plaintiffs alleged in separate complaints that Schwab breached various state-law duties by routing trades to UBS. Plaintiffs claimed that Schwab could have routed trades to many other venues, and that its arrangement with UBS sometimes resulted in unfavorable executions, both in terms of price and speed.

### A.  The Complaints

On May 8, 2005, Lim filed a putative class action complaint in the Northern District of California alleging that

Schwab's routing of order executions to UBS (1) violated the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200; (2) breached Schwab's fiduciary duty to its clients; and (3) unjustly enriched Schwab. Lim alleged that Schwab's common law "duty of best execution in routing its clients' orders" required Schwab to consider numerous factors when routing client trades, including "execution price, market depth, order size, and trading character of the security." By blindly routing non-directed orders to UBS, Lim alleged, Schwab breached this duty.

On June 24, 2015, Fleming filed a similar putative class action complaint in the same court against Schwab and UBS. Fleming alleged that Schwab (1) breached its contract; (2) violated the UCL; (3) engaged in intentional misrepresentation; and (4) engaged in negligent misrepresentation. Fleming also alleged that UBS violated the UCL.

## B. Procedural Background

After the two cases were assigned to the same district judge, Schwab and UBS moved to dismiss the complaints, asserting that Plaintiffs lacked Article III standing or, in the alternative, that SLUSA deprived the district court of subject matter jurisdiction. The district court upheld the Plaintiffs' standing, but dismissed both actions pursuant to SLUSA. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 847 (9th Cir. 2017) ("[D]ismissals under SLUSA are jurisdictional.").

## II. Discussion

### A. Standing

We must examine at the outset our power under Article III of the Constitution to resolve these cases. *See No*

*GWEN All. of Lane Cty., Inc. v. Aldridge*, 855 F.2d 1380, 1382 (9th Cir. 1988).  Article III requires that a plaintiff "show (1) she has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 868–69 (9th Cir. 2002).  The district court found that "plaintiffs have adequately alleged the existence of an injury in fact" and rejected the defendants' standing arguments.  We agree and review the district court's standing determination de novo.  *Arakai v. Lingle*, 477 F.3d 1048, 1056 (9th Cir. 2007).

The seminal inquiry is whether the alleged injury "is both 'concrete *and* particularized.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000)).  Although related, concreteness and particularity are distinct concepts.  *Id.* at 1548.  Particularized injuries "affect the plaintiff in a personal and individual way," while a "concrete injury must be *de facto*; that is, it must actually exist." *Id.* (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 n.1 (1992)) (internal quotation marks omitted).

Fleming's complaint alleged that because of the Schwab-UBS agreement, he "missed opportunities to profit when [his] trades failed to be executed or failed to obtain the best price," and cited academic work supporting his contention that the agreement affected execution prices.  Similarly, Lim's complaint alleged "Schwab's routing of nearly all [Plaintiffs'] non-directed orders to UBS does not allow [Plaintiffs] to receive the most advantageous prices for their trades" and that UBS "regularly and routinely executes

[Plaintiffs'] trades at price less favorable than the best price available in the broader marketplace."

The complaints alleged both particularized and concrete injuries—higher execution prices than might have occurred with a different market center. The complaints thus alleged the required injury in fact. That the eventual monetary damage arising from Schwab's conduct may be small does not negate Plaintiffs' standing. *See Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973, 983 (2017).

Schwab asserts that Article III is not satisfied because Plaintiffs have not identified particular trades that caused them losses. But, the complaints alleged that at least some of the Plaintiffs' trades were more costly and less expeditious than they would have been if not routed to UBS. Whether the Plaintiffs can identify those trades at a later stage of litigation does not deprive them of standing to sue. At the motion to dismiss stage, "we presume[ ] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561 (alteration in original) (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (internal quotation marks omitted).

Contrary to the defendants' assertions, *Spokeo* does not require a contrary result. *Spokeo* merely reiterated longstanding Article III jurisprudence requiring both concrete and particularized harms. *See* 136 S. Ct. at 1548 ("We have made it clear time and time again that an injury in fact must be both concrete *and* particularized." (italics in original)). Thus, "a bare [statutory] procedural violation," such as an improperly reported zip code by a consumer reporting agency, cannot by itself give rise to concrete harm. *Id.* at 1550. But here, Plaintiffs alleged more—overpaying for securities trades and losses from trades not executed

promptly.  Those concrete injuries, if proved, are redressable through monetary damages.[1]

## B.  SLUSA

### 1.  Background

In the early 1990s, Congress became concerned that "private securities litigation was . . . being used to injure the entire U.S. economy." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 81 (2006) (internal quotation marks and citations omitted).  To stem abuses from "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and manipulation by class action lawyers of the clients whom they purportedly represent," Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. 104-67, 109 Stat. 737.  *Dabit*, 547 U.S. at 81 (internal quotation marks omitted).  PSLRA imposed heightened pleading standards for claims under § 10(b) of the Security Exchange Act of 1934 and Rule 10b-5.[2]  *See* 15 U.S.C. § 78u-4(b).  But,

---

[1] UBS also argues that Fleming lacks standing to pursue injunctive relief because he did not allege future harm.  Although "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," *City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) (alteration in original) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 (1974)), Fleming alleged that the challenged practices continue.  A plaintiff alleging "continuing, present adverse effects" of challenged conduct has standing to pursue injunctive relief.  *Id.*

[2] Section 10b of the Securities Exchange Act of 1934, Pub. L. 73-291, 48 Stat. 881, prohibits the use of "any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe."  15 U.S.C. § 78j(b).  Rule 10b-5 prohibits employing devices or schemes to defraud,

PSLRA had the unintended effect of encouraging claims under state securities laws, which were not subject to the new pleading rules. *Dabit*, 547 U.S. at 82.

Seeking "to prevent state class actions alleging fraud 'from being used to frustrate the objectives' of [ ] PSLRA," Congress enacted SLUSA in 1998. *Freeman Inv., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013) (quoting H.R. Conf. Rep. 105–803 (1998)). "SLUSA bars private plaintiffs from bringing (1) a covered class action (2) based on state law claims (3) alleging that defendant made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Id.* (citing 15 U.S.C. § 78bb(f)(1)).**[3]**

---

making untrue statements or omitting statements of material fact to mislead, or engaging in acts that "would operate as a fraud or deceit." 17 C.F.R. § 240.10b-5(c).

**[3]** In relevant part, §78bb(f)(1) provides:

(f) Limitations on remedies

(1) Class action limitations

No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—

(A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or

Plaintiffs concede that their complaints involve "covered" class actions based on state-law claims involving "covered" securities. *See* 15 U.S.C. § 78bb(f)(5)(B), (E). The disputed issue is whether the complaints also allege that Schwab made "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A).

### 2.  The Scope of SLUSA's bar

The text of SLUSA is substantially similar to that of § 10(b) and Rule 10b-5. *See Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1074 (2014) ("[I]n designing SLUSA, Congress imported the key phrase from § 10(b) . . . and . . . Rule 10b-5 . . . .") (internal quotation marks and citation omitted); *Dabit*, 547 U.S. at 86 (noting that in drafting SLUSA, "not only did Congress use the same words as are used in § 10(b) and Rule 10b-5, but it used them in a provision that appears in the same statute as § 10(b)"). Accordingly, SLUSA bars jurisdiction over any claim that could give rise to liability under § 10(b) or Rule 10b-5, even if the alleged conduct also gives rise to a state-law cause of action. *Dabit*, 547 U.S. at 84–86.

However, a claim is not automatically SLUSA-barred merely because it involves securities. *See SEC v. Zandford*, 535 U.S. 813, 820 (2002) (admonishing courts not to interpret § 10(b) and Rule 10b-5 "so broadly as to convert every common-law fraud that happens to involve securities into a violation of § 10(b)"). A party who enters into an

---

(B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

agreement involving securities intending from the outset to breach it has violated § 10(b) and Rule 10b-5 in addition to breaching a contract. *See Wharf (Holdings) Ltd. v. United Int'l Holdings, Inc.*, 532 U.S. 588, 589–90 (2001) (holding that "a company that sold an option to buy stock while secretly intending never to honor the option" violates § 10(b) and Rule 10b-5). But, if the contract dispute simply concerns a "disputed truth," not a misrepresentation or omission, the SLUSA bar is not engaged. *Freeman*, 704 F.3d at 1114–16. Thus, for example, a claim that Schwab charged Plaintiffs $10 for executing a trade, despite a contract providing for a $5 charge, would not be barred. Such a claim is not for a violation of federal securities laws—there is no misrepresentation or omission—but merely for breach of contract.

In determining whether the SLUSA bar applies, substance governs over form. *Freeman*, 704 F.3d at 1115 ("[P]laintiffs cannot avoid preclusion through artful pleading that removes the covered words . . . but leaves in the covered concepts.") (second alteration in original) (quoting *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009)) (internal quotation marks omitted). Thus, we must determine if the Plaintiffs' claims, stripped of formal legal characterization, could have been pursued under § 10(b) and Rule 10b-5. *See Madden v. Cowen & Co.*, 576 F.3d 957, 965 (9th Cir. 2009) (construing "the phrase 'in connection with the purchase or sale' of securities in SLUSA the same way we construe it in the Section 10(b) context"); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002), *abrogated on other grounds by Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208 (9th Cir. 2009) ("Just as the Supreme Court observed that Section 10(b) should be construed not technically and restrictively, but flexibly to effectuate its remedial purposes, SLUSA should also be

viewed as part of the remedial package of federal securities laws and should be construed accordingly.") (internal quotation marks and citation omitted).**[4]**

## C.  Plaintiffs' Claims

### 1.  Misrepresentation or omission prong

The gravamen of each of Plaintiffs' complaints, no matter how legally characterized, is that defendants intentionally breached a duty of "best execution."  We have not yet addressed whether breach of the duty of best execution violates federal securities law.  But, four of our sister circuits have held that breach of that duty can violate § 10(b) and Rule 10b-5 under certain circumstances.  *See Kurz v. Fid. Mgmt. & Research Co.*, 556 F.3d 639, 640 (7th Cir. 2009) ("Best execution . . . affects the net price that investors pay or receive for securities and is accordingly widely understood as a subject of regulation under the

---

**[4]** *See also Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 916 (7th Cir. 2017) (per curiam) ("[I]f a claim could be pursued under federal securities law, then it is covered by [SLUSA] even if it also could be pursued under state contract or fiduciary law."); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 149 (2d Cir. 2015) ("SLUSA's preclusion applies when the state law claim is predicated on conduct *of the defendant* specified in SLUSA's operative provisions, which reference the anti-falsity provisions of the 1933 and 1934 Acts." (italics in original)); *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 299 (3d Cir. 2005) ("Because SLUSA employs terms with settled meaning under existing federal securities law, Congress evidently intended to preempt those actions sufficiently 'connected' to a securities transaction to be actionable under § 10(b) and Rule 10b-5."); Cecilia A. Glass, Note, *Sword or Shield? Setting Limits on SLUSA's Ever-Growing Reach*, 63 DUKE L. J. 1337, 1376 (2014) ("If a claim could have been brought in federal court under Section 10(b), that is the end of the inquiry—the claim is preempted.").

Securities and Exchange Act of 1934 . . . .") (internal quotation marks and citation omitted); *Gurfein v. Ameritrade, Inc.*, 312 Fed. App'x 410, 412 (2d Cir. 2009) (recognizing a duty of best execution under federal securities law); *Geman v. SEC*, 334 F.3d 1183, 1187–88, 1192–93 (10th Cir. 2003) (affirming SEC decision that violation of best execution duty violated federal securities laws); *Newton v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 135 F.3d 266, 269–72, 274–75 (3d Cir. 1998) (en banc) (recognizing a § 10(b) claim for breach of duty of best execution). The Securities and Exchange Commission has reached a similar conclusion. *See In re Morgan Stanley & Co.*, Exchange Act Release No. 55,726, 2007 WL 1364323, at \*8 (May 9, 2007) ("Failure to satisfy the duty of best execution may constitute a violation of . . . the Exchange Act . . . .").

To be sure, however, not every breach of the best execution duty violates § 10(b) and Rule 10b-5 and is thus subject to the SLUSA bar. For example, Schwab could breach its best execution duty if its trading systems crashed, but without more that breach would not involve manipulative conduct in violation of § 10(b) or Rule 10b-5. Rather, SLUSA only bars best execution claims "to the extent that a best execution violation is based on fraud or nondisclosure." Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* § 14:121 (2017).

Examining "the substance of the allegations" of Plaintiffs' complaints, *Freeman*, 704 F.3d at 1115, we conclude that all of the pleaded causes of action allege deceptive conduct. Fleming alleged that Schwab, putting its own financial interests above those of the putative class, "defrauded their clients by purporting to obtain best execution for their clients' trading orders while omitting to disclose to their clients that nearly all trades are routed to

UBS, regardless of any best execution consideration." Likewise, Lim charged that "Schwab lets its contractual obligations [to UBS] determine its order routing decision," indicating that Schwab misleadingly failed to disclose its intention to favor its own interests over those of its clients. The district court correctly characterized the gravamen of these complaints as "Schwab either misrepresented that best execution would be achieved for its customers, or failed to disclose that best execution was no longer possible." "In either case," the district court properly concluded, "plaintiffs are accusing Schwab of engaging in deceptive conduct."

Plaintiffs' pleadings carefully allege at least several causes of action whose elements do not include manipulative conduct.  But, the substance of all their allegations is that Schwab, motivated by a conflict of interest, deceived Plaintiffs into believing it would deliver best execution of their trades but knew that sending all trades to UBS would breach that duty.  The complaints thus alleged a deceptive practice actionable under federal securities law. *See Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 932 (7th Cir. 2017) ("A fiduciary that makes a securities trade without disclosing a conflict of interest violates federal securities law. . . . [A] broker-dealer that fails to achieve best execution for a customer by arranging a trade whose terms favor the dealer rather than the client has a securities problem, not just a state-law contract or fiduciary-duty problem."); *cf Rayner v. E\*TRADE Fin'l Corp.*, 248 F. Supp. 3d 497, 503 (S.D.N.Y. 2017) (finding allegations "that E\*TRADE routed orders to maximize kickback revenue" SLUSA-barred) (internal quotation marks omitted).

Plaintiffs protest that "[l]abeling a willful failure to meet a contract's terms as deceptive conduct for SLUSA's purposes . . . would subject virtually every breach of contract

claim in the securities context to a SLUSA bar." However, complaints merely involving contract interpretation that do not allege deception or manipulation are not covered by SLUSA even if they involve securities. *Freeman*, 704 F.3d at 1115–16. And, only actions filed on behalf of a covered class (more than fifty people) fall within SLUSA's purview. *See Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 636 n.1 (2006) (noting that SLUSA "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device").

### 2. In connection with prong

Plaintiffs assert that even if their complaints allege deceit, their claims are not SLUSA-barred because the challenged conduct did not occur "in connection with the purchase or sale of" a security. 15 U.S.C. § 78bb(f)(1). But, the Supreme Court has read SLUSA's "in connection with" requirement broadly, finding it satisfied if misrepresentations simply "coincide with a securities transaction." *Dabit*, 547 U.S. at 77–78, 85 (internal quotation marks omitted). The misrepresentation need only "have more than some tangential relation to the securities transaction." *Freeman*, 704 F.3d at 1116 (internal quotation marks and citation omitted); *see also Chadbourne*, 134 S. Ct. at 1066 (holding that SLUSA's "in connection with" prong extends to "misrepresentations that are material to the purchase or sale of a covered security").

That test is satisfied here. As the district court observed, the complaints alleged that "the false promise of best execution . . . induce[d] [Plaintiffs] to purchase or sell securities through Schwab for a fee, and [ ] caused losses directly resulting from what clients believed to be legitimate securities transactions." The net price obtained when

purchasing or selling a security is plainly material to a buyer or seller, and the alleged breach here coincided with securities transactions. *See Kurz*, 556 F.3d at 641 (finding that an argument "that the duty of best execution is not in connection with the purchase or sale of securities . . . is frivolous, given *Dabit*") (internal quotation marks omitted); *Newton*, 135 F.3d at 270 (holding breach of best execution duty is "a material misrepresentation in connection with the purchase or sale of the securities"); *Rayner*, 248 F. Supp. 3d at 504 (holding that alleged breach of best execution duty "plainly coincided with the securities transactions at issue"); *Zola v. TD Ameritrade, Inc.*, 172 F. Supp. 3d 1055, 1071 (D. Neb. 2016) ("Claims involving alleged violations of the duty imposed on a broker to obtain best execution for customers in executing portfolio transactions are claims 'in connection with' the purchase or sale of securities for SLUSA purposes.").[5]

Plaintiffs assert that because the promise of best execution does not induce clients to trade a particular security, Schwab's breach of its best execution duty cannot be "in connection with" Plaintiffs' trades. But SLUSA requires only that "the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security." *Chadbourne*, 134 S. Ct. at 1066. A broker's fraudulent claim that it is able to provide best execution can surely be material to the client's decision to trade. Fleming claimed that he "missed opportunities to profit when [his] trades failed to be executed or failed to obtain the best price improvement." Likewise, Lim alleged,

---

[5] Because *Chadbourne* stated that "[w]e do not here modify *Dabit*," 134 S. Ct. at 1066, we reject Plaintiffs contention that *Chadbourne* amended the *Dabit* "coincide" standard.

"Schwab's routing of nearly all [Plaintiffs'] non-directed orders to UBS does not allow [Plaintiffs] to receive the most advantageous prices for their trades." These allegations make clear that if Schwab had not misled Plaintiffs into believing that Schwab would obtain the best prices for Plaintiffs' trades, Plaintiffs would not have made those trades. Therefore, Schwab's fraudulent misrepresentations were "in connection with" purchases of covered securities. Plaintiffs cannot have it both ways—they cannot claim that Schwab's failure to provide best execution impacted their securities trades while simultaneously claiming that the breach of duty is not "in connection with" those trades.

Finally, Plaintiffs assert that the misrepresentation must relate to the "nature of the securities." Although misrepresentations about the nature of a security are surely "in connection with" that security, *Falkowski*, 309 F.3d at 1129–31, the in-connection prong can be satisfied otherwise. "[T]he fraud in question need not relate to the investment value of the securities themselves" but need only "have more than some tangential relation to the securities transaction." *Id.* at 1131 (quoting *Ambassador Hotel Co. v. Wei-Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir. 1999)). The allegations here overcome that slim hurdle.

### 3. Fleming's claims against UBS

Fleming alleged that UBS violated the UCL by allowing so-called "high frequency traders" access to Schwab's order flow, enabling them to engage in market manipulation. His complaint contended that "[o]nce the trades from Schwab are routed to UBS, they are vulnerable to multiple forms of manipulation, resulting in a loss of profit opportunities for Schwab clients." The complaint thus plainly pleads a "manipulative or deceptive device or contrivance in

connection with the purchase or sale of a covered security," and is SLUSA-barred.  15 U.S.C. § 78bb(f)(1)(B).

## III.     Conclusion

The judgment of the district court is **AFFIRMED**.