**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LINDIE L. BANKS, individually and on behalf of all others similarly situated; ERICA LEBLANC,
*Plaintiffs-Appellants*,

v.

NORTHERN TRUST CORPORATION; NORTHERN TRUST COMPANY,
*Defendants-Appellees.*

No. 17-56025

D.C. No.
2:16-cv-09141-
JFW-JC

OPINION

Appeal from the United States District Court
for the Central District of California
John F. Walter, District Judge, Presiding

Argued and Submitted May 15, 2019
Pasadena, California

Filed July 5, 2019

Before: Jacqueline H. Nguyen and John B. Owens, Circuit
Judges, and John Antoon II,[*] District Judge.

Opinion by Judge Owens

---

[*] The Honorable John Antoon II, United States District Judge for the Middle District of Florida, sitting by designation.

## SUMMARY**

### Securities Litigation Uniform Standards Act of 1998

The panel reversed the district court's dismissal, as barred by the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), of a putative class action brought against Northern Trust alleging violations of state law involving breaches of fiduciary duty by a trustee.

SLUSA deprives a federal court of jurisdiction to hear certain state-law class actions.

The panel held that SLUSA did not preclude plaintiffs' imprudent investment claims. Specifically, the panel held that SLUSA's "in connection" requirement did not preclude claims brought by an irrevocable trust beneficiary – who has no control over the trustee – alleging imprudent investments by that trustee. Here, the district court's dismissal relied entirely on its conclusion that Northern was an agent of the trusts' beneficiaries, a conclusion unsupported by the moving papers and First Amended Complaint.

The panel held that the district court erred in dismissing plaintiffs' fee-related tax preparation and overcharging claims on SLUSA-preclusion grounds. The panel also held that plaintiffs' fee-related claims survive a Fed. R. Civ. P. 12(b)(6) motion to dismiss.

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Finally, the panel held that because plaintiffs' elder abuse claims and the claims against Northern's corporate parent were not precluded by SLUSA, and because the briefing provided no other basis for dismissal, the dismissal of those claims were reversed.

## COUNSEL

Brian J. Malloy (argued) and Thomas J. Brandi, The Brandi Law Firm, San Francisco, California; Derek G. Howard, Derek G. Howard Law Firm, Mill Valley, California; for Plaintiffs-Appellants.

Craig C. Martin (argued), Brienne M. Letourneau, Amanda S. Amert, Daniel J. Weiss, and Craig C. Martin, Jenner & Block LLP, Chicago, Illinois; for Defendants-Appellees.

## OPINION

OWENS, Circuit Judge:

Lindie Banks and her daughter Erica LeBlanc ("Banks"), hoping to represent a class of plaintiffs, appeal from the dismissal of their putative class action lawsuit against Northern Trust Company and Northern Trust Corporation ("Northern") for violations of state law involving breaches of fiduciary duty by a trustee. The district court interpreted the Securities Litigation Uniform Standards Act of 1998 ("SLUSA") to bar the case from proceeding in federal court. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Banks is the beneficiary of the irrevocable Lindstrom Trust, created under California law.  As trustee, Northern has sole discretion on how to manage the trust's assets; Banks cannot participate in, direct, or be involved in those decisions.

According to the First Amended Complaint ("FAC"), Northern invested the trust's assets in Northern's own affiliated "Funds Portfolio," rather than seeking superior investments outside its financial umbrella.  This practice allegedly led to the trust suffering suboptimal returns, which would not have happened if Northern prioritized the interests of the trust beneficiaries (and not merely its own).  Banks argues that favoring these inferior affiliated funds – over better-performing non-Northern funds – put money in the pockets of Northern, which thereby violated its duties of prudent investment and loyalty to Banks.

The FAC also alleges that Northern, as part of an "undisclosed internal decision to create a new profit center," charged improper and excessive fees for "routine preparation of fiduciary tax returns" and failed to maintain records to justify these expenses.  These new fees, which previously were "part of the base fee and a fundamental duty for a trustee," allegedly breached Northern's duty of prudent administration.

In addition, the FAC alleges elder abuse and unfair competition claims under California law, both premised on the same factual allegations underlying the investment and fee-related claims.

Northern filed a Rule 12(b)(6) motion to dismiss, contending that SLUSA prohibited these state-law claims

from proceeding in federal court. Over Banks' objection, the district court agreed with Northern and dismissed the FAC without leave to amend. The court reasoned that the allegedly imprudent investments were in connection with the purchase or sale of covered securities and featured material misrepresentations or omissions. The court concluded that SLUSA precluded Banks from bringing state-law fiduciary duty claims as a class action in federal court.

The district court dismissed the fee, elder law, and unfair competition claims without directly addressing them.

## II. DISCUSSION

Although Northern moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the parties now agree that Rule 12(b)(1) – lack of subject matter jurisdiction – is the proper rule to challenge a complaint under SLUSA. *See Hampton v. Pac. Inv. Mgmt. Co.*, 869 F.3d 844, 846–47 (9th Cir. 2017) (holding that Rule 12(b)(1), and not Rule 12(b)(6), governs SLUSA motions to dismiss).

We review de novo whether the district court should have dismissed this case under Rule 12(b)(1). *See U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1126 (9th Cir. 2015) (en banc).

### A. SLUSA does not preclude Banks' imprudent investment claims.

#### 1. SLUSA

In 1995, Congress passed the Private Securities Litigation Reform Act ("PSLRA"), which limited the filing of federal securities class actions in federal court. Pub. L.

No. 104-67, 109 Stat. 737. "[T]o avoid PSLRA's heightened pleading requirements for class-action securities lawsuits, plaintiffs began asserting what were essentially federal securities law claims as state law causes of action in state courts. Congress sought to end this practice by enacting SLUSA." *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018) (citation omitted). SLUSA prohibits certain state-law class actions:

> (1)     Class action limitations.
>
> No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging—
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1).

To simplify, SLUSA deprives a federal court of jurisdiction to hear "(1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the

purchase or sale of (5) a covered security." *Northstar*, 904 F.3d at 828.**[1]**

When applying SLUSA to a complaint, courts must "look to the substance of the allegations" to ensure that "artful pleading" does not "remove[] the covered words . . . but leave[] in the covered concepts." *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1115 (9th Cir. 2013) (second alteration in original) (quoting *Segal v. Fifth Third Bank N.A.*, 581 F.3d 305, 311 (6th Cir. 2009)). With that important principle in mind, we recognize that this case turns primarily on the "in connection with" requirement.**[2]** Even assuming Banks adequately alleged that Northern made a misrepresentation or omission or employed a manipulative device or contrivance, we must decide if Northern's alleged activity was *in connection with* the purchase or sale of a covered security.

### 2. The "in connection with" requirement

The Supreme Court twice has spoken about SLUSA and its "in connection with" requirement. In *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71 (2006), the Court stressed that the "in connection with" requirement should be interpreted broadly, as "[a] narrow reading of the statute would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose," which is to prevent state-law class actions from end-running the PSLRA. *Id*. at 86. The Court explained that "it is enough

---

**[1]** SLUSA does not preclude a plaintiff from filing an individual (i.e., non-class action) state-law securities claim in state court.

**[2]** Northern's attempt to differentiate between subsections A and B of SLUSA is unpersuasive because the "in connection with" requirement is an element of both. *See* 15 U.S.C. § 78bb(f)(1)(A), (B).

that the fraud alleged 'coincide' with a securities transaction – whether by the plaintiff or by someone else" – to meet the "in connection with" requirement. *Id*. at 85.

In *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377 (2014), the Court revisited the "in connection with" requirement. The plaintiffs in *Troice* alleged that the defendants induced victims to purchase uncovered securities (certificates of deposit that are not traded on any national exchange) by falsely stating that covered securities (securities traded on a national exchange) backed the uncovered securities. *Id*. at 380. The Court held that SLUSA did not preclude the claims because the statute required "misrepresentations that are material to the purchase or sale of a covered security." *Id.* at 387. In discussing materiality, the Court addressed the "in connection with" requirement, which demands "a connection . . . where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security." *Id.* at 387 (citing *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 36–40 (2011) (stating that a misrepresentation or omission is "material" if a reasonable investor would have considered the information significant when contemplating a statutorily relevant investment decision)).

The Court also held that, under SLUSA, "[a] fraudulent misrepresentation or omission is not made 'in connection with' . . . a 'purchase or sale of a covered security'" unless that fraudulent conduct "is material to a decision by one or more individuals (*other than the fraudster*) to buy or sell a 'covered security.'" *Id*. at 387 (emphasis added). The Court stressed that "the 'someone' making that decision to purchase or sell must be a party other than the fraudster." *Id*. at 388. "If the only party who decides to buy or sell a

covered security as a result of a lie is the liar, that is not a 'connection' that matters." *Id*.

The Court was careful to state that *Troice* did not overrule *Dabit*, noting:

> [I]n *Dabit*, we held that [SLUSA] precluded a suit where the plaintiffs alleged a "fraudulent manipulation of stock prices" that was material to and "'coincide[d]' with" third-party securities transactions, while also inducing the plaintiffs to "hold their stocks long beyond the point when, had the truth been known, they would have sold." We do not here modify *Dabit*.

*Id*. at 387 (citations omitted). Nevertheless, the Court distinguished *Dabit* and other dissimilar cases because they "involved a victim who took, tried to take, or maintained an ownership position in the statutorily relevant securities through 'purchases' or 'sales' induced by the fraud." *Id*. at 389. The Court emphasized that "[e]very one of these cases . . . concerned a false statement (or the like) that was material to *another* individual's decision to purchase or sell a statutorily defined security." *Id*. at 393 (emphasis added) (internal quotation marks and alteration omitted).

This case presents a question of first impression in this circuit: whether allegations concerning a trustee's imprudent investments constitute activity "in connection with" the purchase or sale of securities when those allegations are brought by the beneficiaries of an irrevocable trust. Banks argues that any false statements or deceptive activity by Northern could not have been material to a beneficiary's individual decision to purchase or sell a covered security for two reasons: (1) a beneficiary who is not also a trustee of an

irrevocable trust cannot make an individual decision to purchase or sell securities for the trust, and (2) Banks has no control over Northern's decision to do so.

Applying *Troice* here, we agree with Banks. Unlike an agent-principal relationship, beneficiaries who are not also trustees of an irrevocable trust cannot direct Northern's actions as the trustee. Accordingly, even if Northern engaged in fraudulent conduct, that conduct does not change the fact that its beneficiaries are unable to purchase or sell covered securities.

Northern contends that this difference between an agent and a trustee is a meaningless one. But if Northern were acting as an agent – similar to a stockbroker – Northern's statements and allegedly deceptive conduct could meet SLUSA's "in connection with" requirement because Banks (and other beneficiaries) could have relied on Northern's statements to induce the purchase of the affiliated funds. Conversely, if Northern was in fact acting as a trustee, and if Banks did not have control over investment of trust assets, Northern's deceptive or manipulative conduct resulted only in Northern – and no other party – purchasing affiliated funds. As *Troice* specifically notes, SLUSA does not preclude cases where "the only party who decides to buy or sell a covered security as a result of a lie is the liar" because "that is not a 'connection' that matters." 571 U.S. at 388; *see also O'Donnell v. AXA Equitable Life Ins. Co.*, 887 F.3d 124, 130 (2d Cir. 2018) (holding in a non-trust case that even if plaintiffs allege fraud, that fraud must be material to the plaintiffs' decision to buy, sell, or hold a covered security to meet the "in connection with" requirement for SLUSA preclusion).

Caselaw and secondary sources support our conclusion that preclusion turns on the distinction between a trustee and an agent. As we previously have explained, while "both agents and trustees are fiduciaries . . . there are significant differences between the two." *N.L.R.B. v. United Bhd. of Carpenters & Joiners, Local No. 1913*, 531 F.2d 424, 426 (9th Cir. 1976). Simply put, "[a]n agent acts for and on behalf of his principal and subject to his control," while a "trustee acts for the benefit of the beneficiaries of the trust; he is an agent only if he agrees to hold title for the benefit and subject to the control of another." *Id.* (citing Restatement 2d, Agency § 14B; Restatement 2d, Trusts § 8).

In contrast to the beneficiary-trustee relationship, an agent acts subject to the control of his or her principal. This degree of control explains the difference between this case and *S.E.C. v. Zandford*, 535 U.S. 813, 822 (2002), upon which Northern heavily relies. In *Zandford*, the Supreme Court held that a broker could still be liable under § 10(b) of the Securities Exchange Act without making an affirmative misrepresentation because his principals granted him full discretion to trade stocks on their behalf. *See id.* at 822. Each time the broker "exercised his power of disposition for his own benefit, that conduct, without more, was" actionable under § 10(b). *Id.* at 821 (internal quotation marks omitted) (quoting *United States v. Dunn*, 268 U.S. 121, 131 (1925)). Northern argues *Zandford* shows that the level of control between an agent and a trustee does not matter because a principal can give full control to an agent – just like a trustee has full control of a trust.

Northern overlooks the fact that the principal controls and directs the agent, who the principal likely has chosen. Unlike in the irrevocable trust context, a principal can revoke control from an agent in the course of their relationship. In

the irrevocable trust context, by contrast, unless otherwise specified in the trust instrument, a beneficiary cannot alter the powers of a trustee or remove the trustee without petitioning a court of law. *See* Cal. Prob. Code § 17200(10) (providing removal power to probate courts); Arnold H. Gold et al., California Civil Practice Probate and Trust Proceedings § 24:47, Westlaw (database updated May 2019) (explaining trustees can be removed only in accordance with the trust instrument or by a court).

Here, the FAC does not allege that beneficiaries made any investment decision based on Northern's conduct or statements. Quite the opposite: the FAC alleges that Banks had no control over how Northern invested the trust's assets because Banks was only the beneficiary of an irrevocable trust. *See* FAC ¶¶ 16 ("[U]nder the governing trust instrument, all investment discretion lies exclusively with the trustee . . ."), 41 ("[A]s a legal matter, under the terms of their trust, [Northern] has sole discretion with regard to any and all investments."), 359–60 (Northern "had the power and responsibility to administer and invest the trust assets in the best interests of the trust beneficiaries . . . [who] had no control over the investments"). The FAC also alleges that Northern conducted all the relevant purchases of covered securities without direction from Banks or other beneficiaries. Accordingly, *Troice*'s discussion of SLUSA's "in connection with" requirement is directly on point. The FAC does not allege that Northern's activities as trustee were "in connection with" any purchase or sale of covered securities by anyone other than Northern.

Northern's strongest support against our application of *Troice* – and its discussion of the "in connection with" requirement – are two pre-*Troice* cases: *Segal v. Fifth Third Bank, N.A.*, 581 F.3d 305 (6th Cir. 2009), and *Siepel v. Bank*

*of Am., N.A.*, 526 F.3d 1122 (8th Cir. 2008). In *Segal*, trust beneficiaries alleged that the trustee breached its fiduciary and contractual duties by investing in proprietary and higher fee accounts that benefited the trustee. 581 F.3d at 308. The Sixth Circuit affirmed the dismissal of the complaint, holding that SLUSA precluded the claims. *See id.* at 309–10. In *Siepel*, the trust beneficiaries alleged state-law fiduciary duty claims against the trustee because it failed to disclose conflicts of interest in its selection of nationally traded securities. *See* 526 F.3d at 1124. The Eighth Circuit similarly held that SLUSA precluded the state-law claims because the fraud "coincided" with the trustee's purchase of shares in the mutual funds. *See id.* at 1127.

But the post-*Troice* decision in *Henderson v. Bank of N.Y. Mellon Corp.*, 146 F. Supp. 3d 438 (D. Mass. 2015), explains why Northern's reliance on *Segal* and *Siepel* is misplaced:

> [E]ven if the self-dealing allegations amount to a fraud claim, the fraud was not in connection with the purchase or sale of the covered securities except by the fraudster, i.e., the trustee. Here, the plaintiff, as a trust beneficiary, was powerless to buy or sell covered securities . . . .
>
> . . . .
>
> The analysis in both [*Segal* and *Siepel*] is foreclosed by *Troice*, because both cases rely on *Dabit*'s broad holding that for SLUSA to preempt, the fraud may merely "coincide" with the purchase or sale of covered

> securities.  *Siepel*, 526 F.3d at 1127; *Segal*,
> 581 F.3d at 312.

146 F. Supp. 3d at 443.**[3]**

In *Henderson*, the plaintiff-beneficiaries brought similar fee and imprudent investment claims against the defendant-trustee. *See id*. at 440–41.  The court held that in light of *Troice*, SLUSA did not preclude the claims. *See id*. at 443–44.  Northern argues *Henderson* directly contradicts *Dabit* and construes the "in connection with" requirement too narrowly.   But *Henderson*'s understanding of *Troice* conforms with the Supreme Court's explanation of the "in connection with" requirement: it must be read broadly, but not so broadly that the connection between a defendant's conduct and the covered security becomes immaterial.**[4]**  As we already concluded after *Dabit*, the claims should "have more   than   some   tangential   relation   to   the   securities

---

**[3]** Similarly, Northern's reliance on *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1155–56 (9th Cir. 2017), and *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 929, 933–34 (7th Cir. 2017), is misplaced because both cases involved an agent-principal relationship. *See also Taksir v. Vanguard Grp.*, 903 F.3d 95, 98 (3d Cir. 2018) (noting that *Fleming* and *Goldberg v. Bank of America, N.A.*, 846 F.3d 913 (7th Cir. 2017) (per curiam), were factually distinguishable because those plaintiffs conceded that the alleged misconduct "was plainly material to brokerage customers").

**[4]** Northern asserts that we have cited *Segal* with approval multiple times.   But those citations were only for the proposition that the substance and gravamen of the complaint govern in a preclusion inquiry. *See Freeman*, 704 F.3d at 1115; *Fleming*, 878 F.3d at 1153; *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 705 F. App'x 558, 560 (9th Cir. 2017).  We have not cited *Segal* for its application of SLUSA to state-law trust claims.

transaction." *Fleming*, 878 F.3d at 1155 (quoting *Freeman*, 704 F.3d at 1116).[5] And as the Third Circuit explained in *Taksir*, "the Supreme Court in *Troice* made clear that . . . *Troice* clarifies – rather than modifies – *Dabit*." 903 F.3d at 97.

Northern would like us to read *Dabit* without considering its clarification in *Troice*. But we will not render *Troice* meaningless the way that *Game of Thrones* rendered the entire Night King storyline meaningless in its final season. *Troice* directly supports our conclusion that a trustee's misconduct – over which a beneficiary of an irrevocable trust has no control – cannot constitute misconduct "in connection with" the sale of covered securities where "the only party who decides to buy or sell a covered security as a result of a lie is the [trustee]." *Troice*, 571 U.S. at 388. To use the language in *Troice*, the trustee is both the buyer and the "fraudster"; because the trustee can deceive only itself with any alleged misconduct, its misconduct does not require SLUSA preclusion. *See also Bernard v. BNY Mellon Nat'l Ass'n*, No. 2:18-cv-00783-CRE Dkt. 58 (W.D. Pa. June 14, 2019). *Troice* confirms that SLUSA's "in connection with" requirement does not preclude claims brought by an

---

[5] Northern also contends that we disavowed this application of *Troice* in *Fleming*, where in a footnote we rejected the argument that *Troice* "amended the *Dabit* 'coincide' standard." 878 F.3d at 1155 n.5. This argument fails for two reasons. First, we agree that *Troice* did not amend *Dabit*, but simply clarified its application. *Fleming*'s holding – that the "in connection with requirement" should "have more than some tangential relation to the securities transaction" – supports our conclusion. *Id.* at 1155. Second, *Fleming* considered SLUSA preclusion in a situation involving brokers as agents, not the trust context.

irrevocable trust beneficiary – who has no control over the trustee – alleging imprudent investments by that trustee.[6]

Here, the district court's dismissal relied entirely on its conclusion that Northern was an agent of the trusts' beneficiaries, a conclusion unsupported by the moving papers and the FAC. Not only did the district court fail to consider Banks' allegations that the beneficiaries lacked any control over the trustees – an allegation supported by caselaw and secondary sources – but courts generally determine the existence of an agency relationship at the summary judgment stage, not in determining a motion to dismiss. *See Rookard v. Mexicoach*, 680 F.2d 1257, 1261 (9th Cir. 1982). Moreover, the district court's brief discussion of *Troice* did not acknowledge *Troice*'s holding that the "in connection with" requirement is not met if the fraudster alone bought or sold the covered securities. The district court erred in concluding SLUSA precluded Banks' imprudent investment claims.

Because we conclude Banks' imprudent investment claims do not meet the "in connection with" requirement for SLUSA preclusion, we need not decide whether the claims meet SLUSA's fraudulent conduct requirement, i.e., whether Banks adequately alleged Northern (1) engaged in misrepresentation or omission of a material fact or (2) used or employed any manipulative or deceptive device or contrivance. We reverse and remand all of Banks' imprudent investment claims.

---

[6] Our opinion is limited to claims involving a trustee-beneficiary irrevocable trust relationship in which the trust instrument does not grant the beneficiary financial management trustee powers. We do not opine on how *Troice* may affect other state-law claims.

## B.  Banks' fee-related claims

### 1.  SLUSA does not preclude Banks' fee-related claims.

The FAC alleged three claims related to management fees, asserting that Northern: (1) improperly charged tax-preparation fees, (2) failed to maintain records justifying those costs, and (3) overcharged fixed-fee trusts.  The district court dismissed these claims as precluded by SLUSA but did not explain how the alleged activities were "in connection with" securities transactions.  The same concern that animates our holding as to the imprudent investment claims – that a trustee's misconduct, without more, cannot constitute misconduct "in connection with" the purchase or sale of covered securities – applies equally to Banks' fee claims.

Northern argues that the fee claims should be precluded because they are "inextricably intertwined" with the investment claims.  Not only are the fee claims not precluded by SLUSA because of the "in connection with" requirement, the fee claims also lack any plausible relationship to covered securities.  Unlike the investment claims, Banks' fee claims do not allege conduct in relation to any securities transactions.

The Third Circuit's recent decision in *Taksir*, which held that SLUSA did not bar investors' almost identical overcharging claims against their broker, is instructive.  *See* 903 F.3d at 99.  *Taksir* concluded SLUSA did not apply because the overcharges were "not the result of a material misrepresentation about securities transactions, but rather a contractual breach . . . tangentially related to the securities transactions."  *Id*.  *Taksir* relied on *Troice* for its holding that the fee-related claims were not "in connection with"

transactions involving a security, because the fees were not plausibly material to the sale or purchase of a security. *See id*. Additionally, *Taksir* recognized our dicta in *Fleming* that "a claim that [the broker] charged Plaintiffs $10 for executing a trade, despite a contract providing for a $5 charge, would not be barred" by SLUSA. *Id*. at 98 (alteration in original) (quoting *Fleming*, 878 F.3d at 1153).

The district court's order did not address these considerations or discuss the fee claims in any substantive manner, nor did it explain why SLUSA would preclude these claims. Because we agree with the reasoning in both *Taksir* and *Fleming*, we conclude the district court erred in dismissing the tax-preparation and overcharging claims on SLUSA-preclusion grounds.

### 2. Banks' fee-related claims survive 12(b)(6).

Separately from its SLUSA-preclusion argument, Northern's motion to dismiss the FAC also contended that Banks did not sufficiently plead the fee-related claims under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a complaint must offer "more than labels and conclusions," and instead contain "enough factual matter" indicating "plausible" grounds for relief, not merely "conceivable" ones. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007). Northern argues that because its fees were reasonable, Banks failed to state a claim. Northern also contends the FAC consists of conclusory allegations. The district court did not rule on these arguments because it held SLUSA precluded the fee-related claims.

A trustee must administer a trust according to its instrument and the laws of trusts, *see* Cal. Prob. Code § 16001, and may only incur appropriate and reasonable

costs. *See* Cal. Prob. Code § 16050. Trustees are under a continuing duty to account for dealings with trust property and to provide those accountings to the beneficiaries on demand. *See In re Estate of De Laveaga*, 326 P.2d 129, 133 (Cal. 1958); *see also* Cal. Prob. Code § 16062. A trustee's violation of its duty is a breach of trust. *See* Cal. Prob. Code § 16400.

The FAC alleged which specific fees were at issue – tax-preparation fees and fees in excess of the fixed-fee allowed by the trust – and explained why those fees allegedly breached Northern's duty of loyalty. The FAC also alleged that the $900 tax-preparation fee was previously part of the regular trust administration fee but subsequently became a separate cost, without approval by a probate court. The FAC alleged that, "[a]s time has progressed, and despite the benefits of computerization and technology capabilities at Northern Trust, the fees charged have increased" without explanation. The FAC also asserted that Northern did not provide any information about when, how, or why it began charging tax-preparation fees. The FAC contended these combined allegations amounted to breach-of-trust violations: "[t]his uniform practice of charging excessive and improper fees violates the duties of loyalty and prudent administration by placing [Northern's] own financial interest above the interest of Plaintiffs and members of the proposed Tax Preparation Class."

These detailed allegations meet *Twombly*'s plausibility requirement and amount to more than conclusory labels.

### C. Banks' elder abuse claims and claims against NT Corp.

Finally, Northern argues that Banks' opening brief did not address the district court's dismissal of the elder abuse

claims and the claims against NT Corp., Northern's corporate parent. Banks responds that the district court dismissed all those claims based solely on SLUSA preclusion, which is why its opening brief focused on the inapplicability of SLUSA preclusion. Further, Banks' opening brief argued the district court erred by summarily dismissing the complaint because it should have considered the FAC on a claim-by-claim basis. *See Proctor v. Vishay Intertech., Inc.*, 584 F.3d 1208, 1228 (9th Cir. 2009) (holding that "SLUSA does not require the dismissal of all non-precluded claims appearing in the same complaint as a precluded claim"). As SLUSA does not preclude the elder abuse claims or the claims against NT Corp., and because the briefing provides no other basis for dismissal, we also reverse the dismissal of those claims.[7]

**REVERSED AND REMANDED.[8]**

---

[7] We decline to reach whether the district court erred by dismissing the claims without leave to amend, as our analysis renders that issue moot.

[8] We decline to reassign this case to a different district court judge. *See United States v. Paul*, 561 F.3d 970, 975 (9th Cir. 2009) (per curiam) (noting the three-factor test for reassignment).