**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

EDWARD ANDERSON; COLEEN
WORTHINGTON; JANET GORAL,
      *Plaintiffs-Appellants*,

v.

EDWARD D. JONES & CO., L.P.; THE
JONES FINANCIAL COMPANIES,
LLLP; EDJ HOLDING COMPANY,
INC.; JAMES D. WEDDLE; VINCENT J.
FERRARI,
      *Defendants-Appellees.*

No. 19-17520

D.C. No.
2:18-cv-00714-
JAM-AC

OPINION

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted December 9, 2020
San Francisco, California

Filed March 4, 2021

Before: DANNY J. BOGGS,[*] MILAN D. SMITH, JR.,
and MARK J. BENNETT, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Danny J. Boggs, United States Circuit Judge for
the U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

## SUMMARY[**]

### Securities Law

The panel reversed the district court's dismissal of a class action brought by investors with a financial services firm, alleging breach of fiduciary duties under Missouri and California law when the investors moved their assets from commission-based to fee-based accounts.

The district court concluded that it lacked subject matter jurisdiction over the state law claims because the Securities Litigation Uniform Standards Act (SLUSA) prevented plaintiffs from bringing their claims as a class action consisting of fifty or more persons. The district court also dismissed plaintiffs' securities fraud claim under § 10(b) of the Securities Exchange Act of 1934. Plaintiffs appealed dismissal of their state law claims only.

Reversing, the panel held that SLUSA did not bar plaintiffs' state law fiduciary duty claims because the alleged misrepresentation or omission that formed the basis for the claims was not "in connection with the purchase or sale of a covered security." Following *Chadbourne & Parks LLP v. Troice*, 571 U.S. 377 (2014), the panel held that the phrase "in connection with" requires a showing that the misrepresentation or omission was material to a decision to buy or sell a security. The panel concluded that defendants' alleged failure to conduct a suitability analysis before inviting plaintiffs to switch to fee-based accounts was not

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

material because plaintiffs did not allege that they would have purchased or sold different covered securities had defendants conducted such an analysis.

---

## COUNSEL

Michael Anthony Brown (argued), Spertus Landes & Umhofer LLP, Los Angeles, California; John R. Garner, Garner & Associates, Willows, California; Michael D. Murphy, Franklin D. Azar & Associates P.C., Aurora, Colorado; for Plaintiffs-Appellants.

Mark A. Perry (argued), Gibson Dunn & Crutcher LLP, Washington, D.C.; Alexander K. Mircheff and Meryl L. Young, Gibson Dunn & Crutcher LLP, Los Angeles, California; Samuel A. Keesal Jr., Keesal Young & Logan, Long Beach, California; Julie L. Taylor, Keesal Young & Logan, San Francisco, California; for Defendants-Appellees.

---

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Edward Anderson and others (collectively, Plaintiffs) are the Lead Plaintiffs in a class action brought against Defendant-Appellee Edward D. Jones & Co., L.P., and other associated entities and individuals (collectively, Edward Jones). Plaintiffs alleged that Edward Jones breached its fiduciary duties owed to Plaintiffs under Missouri and California law. The district court concluded that it did not have subject matter jurisdiction because the Securities Litigation Uniform Standards Act (SLUSA)

prevents Plaintiffs from bringing their claims as a class action consisting of fifty or more persons. *See* 15 U.S.C. § 78bb(f)(1), (f)(5)(B).

Because Edward Jones's alleged misrepresentation or omission that forms the basis for Plaintiffs' fiduciary duty claims is not "in connection with the purchase or sale of a covered security," *id.* § 78bb(f)(1)(A), we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Plaintiffs' Investment Relationship with Edward Jones

Plaintiffs were investors with Edward Jones, a financial services firm headquartered in St. Louis, Missouri.[1] According to Plaintiffs, they are "buy-and-hold clients," which means that they "conduct[] little to no trading each year." Plaintiffs previously invested with Edward Jones through commission-based accounts. Under this investment model, "Edward Jones provided its clients free financial advice, only charging them on a per trade basis." Plaintiffs assert that this "model particularly benefitted middle-income investors in small communities who engaged in little to no trading," like themselves.

In 2008, Edward Jones introduced a fee-based model of investing. In a fee-based account, Edward Jones "charged a

---

[1] The background that we lay out in this opinion is largely drawn from Plaintiffs' Second Amended Complaint. Because the district court disposed of this case at the motion to dismiss stage of the litigation, we must accept Plaintiffs' well-pleaded allegations as true. *Northstar Fin. Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018).

flat annual asset management fee." "The standard fee was 1.35% to 1.50% of a client's assets under management," though it could be as high as 2%, in addition to administrative fees. Clients investing in a fee-based account would pay an annual fee "regardless of the transactions" that Edward Jones conducted on behalf of those clients.

Plaintiffs moved their assets from commission-based to fee-based accounts. During the transition, Edward Jones purportedly gave written disclosures to Plaintiffs, including a brochure entitled "Making Good Choices." Clients also signed a form in which they "acknowledge[d] that [the client] has received and read the Brochure, which describes the [fee-based program] in greater detail." Clients also acknowledged that they "made [their] own decision[s] to invest in the" fee-based account. Additionally, clients filled out a form with their investment objectives.

## B. Plaintiffs' Suit Against Edward Jones

Plaintiffs filed their Second Amended Complaint on July 29, 2019, which forms the basis for this appeal. Plaintiffs brought a number of counts against Edward Jones, including allegations that Edward Jones violated its state law fiduciary duties and federal securities law.

Most important to Plaintiffs' fiduciary duty allegations is that Edward Jones allegedly failed to conduct a "suitability analysis" before inviting Plaintiffs to switch to fee-based accounts. Plaintiffs argue that under Financial Industry Regulatory Authority (FINRA) Rule 2111, "broker-dealers must ensure that fee-based accounts are only recommended to those clients for whom they are suitable; as such accounts tend to be more expensive for clients who engage in little to no trading activity." Plaintiffs concede that FINRA Rule 2111 "may not [create] a private right of action," but argue

that a FINRA rule "may be used as evidence of industry standards and practices" when pursuing a breach of fiduciary duty claim.

Additionally, Plaintiffs contend that Edward Jones "improperly incentivize[d] its [financial advisors] to violate their fiduciary duties and rack up asset-based fee revenue for" Edward Jones and "terminated, gave smaller raises and bonuses to, and/or failed to promote [financial advisors] who disagreed with [Edward Jones's] strategy." Plaintiffs allege that Edward Jones pressured financial advisors to switch clients to fee-based accounts through regional meetings, training sessions, and field office visits.

Plaintiffs claim that this lack of a suitability analysis and the corresponding push to move clients to fee-based accounts is a breach of Edward Jones's fiduciary duties under Missouri and California law. According to Plaintiffs, they "should not have been transferred from commission-based accounts into fee-based accounts and, thus, should not have been charged annual asset-based fees at all, only commissions." They seek damages

> in the amount of the fees they paid Edward Jones after having their assets improperly transferred from commission-based accounts into unsuitable fee-based accounts, less the commissions they would have paid if the assets ha[d] properly remained in the commission-based accounts, plus the increase in value the assets would have achieved over time had Edward Jones not improperly deducted the substantial fees from the accounts.

Plaintiffs do not allege that they would have made or not made any particular trades had Edward Jones conducted a suitability analysis.

Plaintiffs also alleged that Edward Jones violated § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and the corresponding Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. In this section of the complaint, Plaintiffs argued that Edward Jones "failed to disclose" the fact that financial advisors "did not conduct a suitability analysis to assess whether a fee-based account was suitable or otherwise in the best interests of clients, prior to transferring the clients from commission-based accounts to fee-based accounts." Plaintiffs claimed that "[t]he commission-based/fee-based dichotomy is critical and material to any investment decision, including Lead Plaintiffs' and the Class members' investment decisions to transfer them from commission-based accounts into fee-based accounts." Plaintiffs did not devote a section of the Rule 10b-5 cause of action to showing that there was "a connection between [Edward Jones's] misrepresentation or omission and the purchase or sale of a security." *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014).

Referring to the choice of investment advisor, rather than the choice to purchase or sell a security, Plaintiffs alleged:

> [I]f [Edward Jones] disclosed to Lead Plaintiffs that Edward Jones was not fulfilling even its most basic responsibilities as an investment advisor—namely, conducting a suitability analysis—Lead Plaintiffs' trust in the relationship would have faltered and a reasonable investor would have looked elsewhere for investment

> advisory services or chosen not to heed their
> [financial advisor's] advice.

The district court dismissed the complaint with prejudice. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 5887209, at *8 (E.D. Cal. Nov. 12, 2019). The district court characterized Plaintiffs' fiduciary duty causes of action as alleging a misrepresentation or omission based on Edward Jones not conducting a suitability analysis. *Id.* at *2. The district court reasoned that Plaintiffs could not plead a state law fiduciary duty claim and a federal securities claim based on the same conduct when Plaintiffs characterized the lack of a suitability analysis as an omission for the federal law claim, but not an omission for the state law claim. *Id.* Thus, in accordance with the previous dismissal,[2] the district court held, pursuant to SLUSA, that it had no jurisdiction over the class action state law claim. *See id.* The court did not address whether the lack of a suitability analysis was "in connection with the purchase or sale of a covered security" for the fiduciary duty claims.[3] 15 U.S.C. § 78bb(f)(1)(A).

---

[2] The district court previously dismissed Plaintiffs' First Amended Complaint for largely the same reasons, but without prejudice. *In re Edward D. Jones & Co., L.P. Sec. Litig.*, No. 2:18-CV-00714-JAM-AC, 2019 WL 2994486, at *9 (E.D. Cal. July 9, 2019).

[3] The district court did hold that Plaintiffs' breach of contract claims involved alleged promises that were "in connection with" the purchase or sale of covered securities. *See In re Edward D. Jones*, 2019 WL 5887209, at *2–3. Plaintiffs' contract claims, which they do not appeal, were not based on a lack of suitability analysis, but instead on "the allegation Edward Jones never intended to provide and did not provide the additional services purportedly warranting the fees imposed in" the fee-based accounts. *Id.* at *2. The district court did "not agree that the

The district court also held that the Rule 10b-5 claim failed for a number of reasons. Relevant here, the district court decided that the alleged lack of suitability analysis was not an actionable omission because Edward Jones provided Plaintiffs with various documents relating to the nature of the fee-based accounts. *See In re Edward D. Jones*, 2019 WL 5887209, at \*4–5. The district court also stated that these various documents "were part of the suitability analysis [Edward Jones] conducted, further undermining Plaintiffs' allegations that [Edward Jones] did not conduct a suitability analysis." *Id.* at \*5 (internal quotation marks and citation omitted). The district court additionally addressed scienter, reliance, and loss causation. *See id.* at \*5–7. However, the district court did not decide whether Plaintiffs' Rule 10b-5 claim alleged "a connection between" the lack of a suitability analysis "and the purchase or sale of a security." *Halliburton*, 573 U.S. at 267.

Plaintiffs appealed only the district court's dismissal of the state fiduciary duty claims. Plaintiffs did not appeal the dismissal of any other claims brought before the district court.

## II.  STANDARD OF REVIEW

We have jurisdiction to entertain this appeal pursuant to 28 U.S.C. § 1291. *Banks v. N. Tr. Corp.*, 929 F.3d 1046, 1049 (9th Cir. 2019). "[D]ismissals under SLUSA are jurisdictional," governed by Federal Rule of Civil Procedure 12(b)(1). *Hampton v. Pac. Inv. Mgmt. Co. LLC*, 869 F.3d 844, 847 (9th Cir. 2017). "We review *de novo* a district court's order granting a motion to dismiss." *Northstar Fin.*

---

breach of contract claims repackage[d] Plaintiffs' specific securities claims." *Id.*

*Advisors, Inc. v. Schwab Invs.*, 904 F.3d 821, 828 (9th Cir. 2018). "In evaluating [Plaintiffs'] claims, we accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.* (citation and internal quotation marks omitted).

## III.  ANALYSIS

### A.  SLUSA

"SLUSA bars a plaintiff class from bringing (1) a covered class action (2) based on state law claims (3) alleging that the defendants made a misrepresentation or omission or employed any manipulative or deceptive device (4) in connection with the purchase or sale of (5) a covered security." *Northstar*, 904 F.3d at 828; 15 U.S.C. § 78bb(f)(1).

SLUSA is to be given a broad interpretation. *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). SLUSA "seeks to prevent state class actions alleging fraud 'from being used to frustrate the objectives' of the" Private Securities Litigation Reform Act of 1995, which created heightened pleading requirements for securities class actions. *Freeman Invs., L.P. v. Pac. Life Ins. Co.*, 704 F.3d 1110, 1114 (9th Cir. 2013) (citation omitted). The statute "is designed to prevent persons injured by securities transactions from engaging in artful pleading or forum shopping in order to evade limits on securities litigation that are designed to block frivolous or abusive suits." *Holtz v. JPMorgan Chase Bank, N.A.*, 846 F.3d 928, 930 (7th Cir. 2017). Accordingly, while we normally construe federal statutes preempting state laws narrowly, "this general principle carries far less force when construing SLUSA," because SLUSA does not preempt state law claims; it only prohibits use of the class action device for

certain claims by fifty or more persons. *Northstar*, 904 F.3d at 829 (citing *Dabit*, 547 U.S. at 87).[4]

However, SLUSA "is not boundless. It 'does not transform every breach of fiduciary duty into a federal securities violation.'" *Rowinski v. Salomon Smith Barney Inc.*, 398 F.3d 294, 301 (3d Cir. 2005) (quoting *SEC v. Zandford*, 535 U.S. 813, 825 n.4 (2002)). To interpret SLUSA too broadly "would interfere with state efforts to provide remedies for victims of ordinary state-law frauds." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 391 (2014). "[A] claim is not automatically SLUSA-barred merely because it involves securities." *Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017).

Finally, because SLUSA includes many statutory terms that Congress also used in § 10(b), courts look to § 10(b) and cases interpreting that statute when deciding SLUSA cases. *See, e.g.*, *Dabit*, 547 U.S. at 86; *Fleming*, 878 F.3d at 1152–53.

## B.  Overlapping Claims

SLUSA's restrictions on bringing a claim as a class action "does not turn on the name or title given to a claim by the plaintiff. It turns instead on the gravamen or essence of

---

[4] SLUSA defines "covered class action" as "any single lawsuit in which . . . damages are sought on behalf of more than 50 persons or prospective class members." 15 U.S.C. § 78bb(f)(5)(B)(i)(I). Thus, "SLUSA does not actually pre-empt any state cause of action." *Dabit*, 547 U.S. at 87. Instead, the statute "simply denies plaintiffs the right to use the class-action device to vindicate certain claims. [SLUSA] does not deny any individual plaintiff, or indeed any group of fewer than 50 plaintiffs, the right to enforce any state-law cause of action that may exist." *Id.* The district court technically erred in discussing "SLUSA preemption." *See In re Edward D. Jones*, 2019 WL 5887209, at *2.

the claim." *Northstar*, 904 F.3d at 829 (internal quotation marks and citation omitted). We "must determine if the Plaintiffs' claims, stripped of formal legal characterization, could have been pursued under § 10(b) and Rule 10b-5." *Fleming*, 878 F.3d at 1153; *see also Goldberg v. Bank of Am., N.A.*, 846 F.3d 913, 916 (7th Cir. 2017) (per curiam). "[P]laintiffs cannot avoid" the SLUSA class action bar "'through artful pleading that removes the covered words . . . but leaves in the covered concepts.'" *Freeman*, 704 F.3d at 1115 (citation omitted). However, "[j]ust as plaintiffs cannot avoid SLUSA through crafty pleading, defendants may not recast [state law] claims as fraud claims by arguing that they 'really' involve deception or misrepresentation." *Id.* at 1116.

Edward Jones argues that Plaintiffs' "position on appeal cannot be reconciled with the operative complaint." Essentially, Edward Jones contends that Plaintiffs' Second Amended Complaint is internally inconsistent. In the Rule 10b-5 portion of the complaint, Plaintiffs alleged that "[t]he commission-based/fee-based dichotomy is critical and material to any investment decision." Yet, as detailed below, for Plaintiffs' fiduciary duty claims to survive SLUSA, they must show that the move from commission-based to fee-based accounts was not material to the decision to purchase or sell covered securities.

Even if Plaintiffs' complaint is internally inconsistent, that does not mean that SLUSA automatically blocks them from bringing their state law claims as a class action. The question of whether a plaintiff *could* have pursued a claim pursuant to Rule 10b-5 is distinct from the question of whether a plaintiff *did* pursue that claim pursuant to Rule 10b-5. A plaintiff can plead both state law and federal securities claims in the same complaint based on the same

underlying conduct by the defendant. The presence of a federal securities cause of action does not mechanically bar the plaintiff from pursuing a state law class action in the same complaint. *See Fleming*, 878 F.3d at 1153; *Norman v. Salomon Smith Barney Inc.*, 350 F. Supp. 2d 382, 387 (S.D.N.Y. 2004). To hold otherwise would prevent plaintiffs from pursuing multiple theories of recovery.

"In light of the liberal pleading policy embodied in [Federal Rule of Civil Procedure 8(e)], . . . a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case," at least at the "initial pleading stage." *Molsbergen v. United States*, 757 F.2d 1016, 1019 & n.4 (9th Cir. 1985). Furthermore, forcing a plaintiff to bring different suits containing their federal and state law claims would be inefficient for district courts in these often-complex cases. The precept that a plaintiff can pursue multiple, even if inconsistent, theories of recovery in the same suit is especially true when the plaintiff does not maintain that inconsistency on appeal. Here, Plaintiffs have not appealed the dismissal of their Rule 10b-5 claim.

The district court implicitly recognized that Plaintiffs pursued two inconsistent causes of action:

> Plaintiffs maintain [that the lack of suitability analysis], unlike the conduct underlying their federal securities claim, is "not based on misrepresentations or omissions." And yet, when describing their federal securities claim pages before, Plaintiffs characterized [Edward Jones's] failure to conduct a suitability analysis as a "misleading omission." [Edward Jones's] suitability analysis, or lack thereof was either an

> omission or it wasn't—Plaintiffs cannot have
> it both ways.

*In re Edward D. Jones*, 2019 WL 5887209, at \*2 (citations omitted). The district court was partially right. In light of SLUSA, "Plaintiffs cannot have it both ways." *Id.* Plaintiffs' fiduciary duty claims cannot proceed as a class action if those claims give rise to a Rule 10b-5 claim. That is the very purpose of SLUSA. However, that Plaintiffs cannot have it both ways does not necessarily mean that they cannot have it either way.[5]

This is not to say that every unsuccessful Rule 10b-5 claim bypasses SLUSA. The overlap between claims that

---

[5] In *Northstar*, we cautioned that courts should not limit their consideration "to a pleading's satisfaction of the bare elements of the state law claim" without also considering how the facts underlying those claims could be pleaded as federal securities law violations. *Northstar*, 904 F.3d at 832. We did not state that the mere presence of a federal securities law cause of action in the same complaint doomed any state law claim as a class action under SLUSA. Additionally, in *Northstar* we discussed only "whether the plaintiff class alleged that the defendants made a misrepresentation or omission." *Id.* at 828. As the district court noted in this case, Plaintiffs might have alleged that the lack of suitability analysis was both an omission for the purposes of Rule 10b-5 and not an omission for the purposes of the state fiduciary duty claims. *See In re Edward D. Jones*, 2019 WL 5887209, at \*2. Here, we instead decide whether any purported misrepresentation or omission was "in connection with the purchase or sale of . . . a covered security." *Northstar*, 904 F.3d at 828. The district court did not address the "in connection with" requirement for either the fiduciary duty or Rule 10b-5 claims. *See id.*; *Halliburton*, 573 U.S. at 267. The district court only did so for Plaintiffs' contract claims, which were based on different conduct. *See supra* n.3. Thus, it is unclear if the district court would have held that Plaintiffs' allegation of a lack of suitability analysis was "a connection between the misrepresentation or omission and the purchase or sale of a security" for the purposes of Rule 10b-5. *Halliburton*, 573 U.S. at 267.

are both unsuccessful under federal securities laws and those subject to SLUSA's class action bar is not clear and may require further elaboration by our court or the Supreme Court.  However, we need not draw the exact line in this case.  As we discuss below, Edward Jones's alleged breach of its fiduciary duties was clearly not "in connection with the purchase or sale of a covered security."    15 U.S.C. § 78bb(f)(1)(A).  Thus, that Plaintiffs simply have pleaded a Rule 10b-5 claim does not mean that SLUSA bars them from bringing their state law fiduciary duty claims as a class action.

The parties further dispute whether a court should review only the state law cause of action, or the entire complaint (including any federal securities cause of action), when determining whether SLUSA bars jurisdiction over the class action.   This disagreement misunderstands the SLUSA analysis.   SLUSA requires a court to "determine if the Plaintiffs' claims, stripped of formal legal characterization, could have been pursued under § 10(b) and Rule 10b-5." *Fleming*, 878 F.3d at 1153.   "Could have been pursued" means that courts must analyze a plaintiff's state law allegations under federal securities law in every case, regardless of whether the plaintiff has actually alleged a federal securities law violation.  Referencing a plaintiff's Rule 10b-5 claim from the same complaint might help a court accomplish this task, but the court would need to conduct such an analysis even in the absence of a pleaded federal securities claim.[6]

---

[6] Because "dismissals pursuant to SLUSA's class-action bar must be for lack of subject-matter jurisdiction," *Hampton*, 869 F.3d at 846, it appears that a court must raise SLUSA in every class action involving a claim that could implicate federal securities law, *see* Fed. R. Civ. P.

## C. "In Connection With" Requires Materiality

For SLUSA's class action bar to apply, the defendant's misrepresentation or omission must be "in connection with the purchase or sale of . . . a covered security." *Northstar*, 904 F.3d at 828. Plaintiffs argue that their fiduciary duty claims "pertain to the terms of the relationship between Edwards Jones and the Plaintiffs and the *vehicle* for delivering the securities – neither of which are in connection with the purchase or sale of the securities themselves." The district court did not address the "in connection with" requirement for the SLUSA bar or the Rule 10b-5 claim. *See In re Edward D. Jones*, 2019 WL 5887209, at \*2, \*6. We now evaluate whether the alleged breach of Edward Jones's fiduciary duties—namely the purported lack of suitability analysis—is in connection with the purchase or sale of a covered security.

The Supreme Court's explanation of the phrase "in connection with" has shifted in recent years. In *Dabit*, the Court gave "in connection with" a relatively broad interpretation. Drawing on § 10(b) precedent, the Court stated that "it [wa]s enough that the fraud alleged 'coincide[d]' with a securities transaction—whether by the plaintiff or by someone else." *Dabit*, 547 U.S. at 85. We then adopted this "coincide" standard. *See, e.g.*, *Freeman*, 704 F.3d at 1116–17.

Eight years after *Dabit*, the Court again confronted the "in connection with" issue, this time in *Troice*. There, the Court held that the phrase requires a showing of materiality:

12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). It is nonetheless more efficient for a party to bring SLUSA to the court's attention.

"A fraudulent misrepresentation or omission is not made 'in connection with' such a 'purchase or sale of a covered security' unless it is material to a decision by one or more individuals (other than the fraudster) to buy or sell a 'covered security.'" *Troice*, 571 U.S. at 387. The Court further explained:

> The phrase "material fact in connection with the purchase or sale" suggests a connection that matters. And for present purposes, a connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security, not to purchase or to sell an uncovered security, something about which [SLUSA] expresses no concern.

*Id.* at 387–88. The Court explained that the materiality principle "d[id] not . . . modify *Dabit*." *Id.* at 387; *but see id.* at 411 (Kennedy, J., dissenting) ("[T]he Court's analysis is inconsistent with the unanimous opinion in *Dabit* . . . ."). The Court reasoned that every previous case involving the in-connection-with language "concerned a false statement (or the like) that was 'material' to another individual's decision to 'purchase or s[ell]'" a covered security, allowing the two decisions to be consistent. *Id.* at 393 (majority opinion).

Whether one views the difference between *Dabit* and *Troice* as a change in interpretation or simply further explanation of SLUSA, our sister circuits have taken this shift seriously. The Sixth Circuit, pre-*Troice*, held that SLUSA "does not ask whether the complaint makes 'material' or 'dependent' allegations of misrepresentation in connection with buying or selling securities." *Segal v. Fifth*

*Third Bank, N.A.*, 581 F.3d 305, 311 (6th Cir. 2009). However, last year, the First Circuit noted that it had "interpreted *Troice* to infuse the transactional nexus analysis with a determinative inquiry into materiality." *United States v. McLellan*, 959 F.3d 442, 459 (1st Cir. 2020); *see also Taksir v. Vanguard Grp.*, 903 F.3d 95, 97 (3d Cir. 2018) ("[T]he Supreme Court in *Troice* made clear that: (1) materiality is relevant to the analysis of SLUSA's prohibitive scope; and (2) *Troice* clarifies—rather than modifies—*Dabit*.").

We too have noted this shift. For example, in *Banks*, we concluded that pre-*Troice* cases read "in connection with" too broadly. *See Banks*, 929 F.3d at 1053–54. We explained that the phrase still "must be read broadly, but not so broadly that the connection between a defendant's conduct and the covered security becomes immaterial." *Id.* at 1054.

We have been less than precise as to *Troice*'s impact. In *Fleming*, we reiterated *Dabit*'s "coincide" language and implied that the materiality requirement accords with the bare requirement that "[t]he misrepresentation need only 'have more than some tangential relation to the securities transaction.'" *Fleming*, 878 F.3d at 1155 (quoting *Freeman*, 704 F.3d at 1116); *see also Banks*, 929 F.3d at 1054 (quoting the "tangential relation" language). In *Fleming*, we quoted *Troice*'s materiality language in a parenthetical, *see Fleming*, 878 F.3d at 1155. We later noted that "SLUSA requires only that 'the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security.'" *Id.* at 1156 (quoting *Troice*, 571 U.S. at 387).

The five-part test for SLUSA we enunciated in *Northstar* and other cases does not explicitly include the requirement of "materiality." *See Northstar*, 904 F.3d at 828. We take

this opportunity to clarify that the fourth prong of that test—"in connection with the purchase or sale," *id.*—must include an inquiry into the materiality of the alleged misrepresentation or omission to the purchase or sale of a covered security. *See Banks*, 929 F.3d at 1051. SLUSA itself does not define "in connection with" or "materiality." *See Troice*, 571 U.S. at 398 (Thomas, J., concurring); *see also Grund v. Del. Charter Guarantee & Tr. Co.*, 788 F. Supp. 2d 226, 239 & n.3 (S.D.N.Y. 2011). We repeat the Supreme Court's admonition in *Troice*: "[A] connection matters where the misrepresentation makes a significant difference to someone's decision to purchase or to sell a covered security." *Troice*, 571 U.S. at 387.

## D. The Alleged Lack of Suitability Analysis Was Not Material

With this materiality requirement in mind, we turn to Plaintiffs' claim that the lack of a suitability analysis did not have a connection to the purchase or sale of a covered security.

### i. Fees

In a number of cases from outside this circuit, plaintiffs have alleged that defendant brokerage firms violated state law by charging customers transaction fees that exceeded the actual cost to the firm when purchasing or selling a covered security. *See, e.g.*, *Brink v. Raymond James & Assocs., Inc.*, 892 F.3d 1142, 1144–45 (11th Cir. 2018). "[C]ustomers chose to trade securities with full knowledge of the amount of the Processing Fee for each trade and never paid more than they agreed." *Id.* at 1149. However, the plaintiffs argued that inflating the fee beyond the actual cost of the transaction constituted a breach of the firm's state law "duty of care owed to its customers, which [plaintiffs] alleged

included a duty to charge customers a reasonable fee for [the firm's] services." *Id.* at 1145.

The Eleventh Circuit concluded that SLUSA did not prohibit legislation this state law claim as a class action because "a reasonable investor would [not] have made different investment decisions had she known that some of the Processing Fee . . . included profit for [the brokerage firm] instead of merely covering the transaction execution and clearing costs." *Id.* at 1149. For support, the Eleventh Circuit cited decisions from the Second and Seventh Circuits that had reached similar conclusions concerning fees. *See Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012) (holding that SLUSA did not bar bringing a breach of contract claim as a class action because "whether Morgan Stanley improperly inflated the . . . fee to include a profit is not objectively material to . . . any class members' investment decisions"); *Feinman v. Dean Witter Reynolds, Inc.*, 84 F.3d 539, 541 (2d Cir. 1996) (holding, in the context of a § 10(b) claim, that "reasonable minds could not find that an individual investing in the stock market would be affected in a decision to purchase or sell a security by knowledge that the broker was pocketing a dollar or two of the fee charged for the transaction"). Thus, such fees were not material to the decision to buy or sell securities for both SLUSA and § 10(b).

Plaintiffs' allegations are based on fees charged by their financial advisor, Edward Jones. Anderson alleges, for example, that "during the history of his commission-based account, [he] had paid minimal fees each year." "After he was moved into [a fee-based account], he paid over $6,000 in fees and would have seen his account balance materially diminish each year for the life of the account had he not closed it."

It is difficult to compare Plaintiffs' fees to those in *Brink* and the other out-of-circuit fees cases. In *Brink*, the broker charged "$30.00 to $50.00 per transaction, depending on the type of security." *Brink*, 892 F.3d at 1144. Thus, each and every time that the broker purchased or sold a covered security for a customer, the broker charged that customer a fee. *See also Taksir*, 903 F.3d at 96 (noting that "Vanguard charged the Taksirs a $7 commission for each of their respective purchases" of Nokia Corporation stock). In this case, Edward Jones took a percentage of each customer's total assets on a regular basis.

For the *Brink* court, it was "the nature of the fees, not their amount, that render[ed] the misrepresentation immaterial as a matter of law." *Brink*, 892 F.3d at 1149; *but see Taksir*, 903 F.3d at 99 ("In contrast with such significant investments, single-digit differences in trading commissions are objectively immaterial."). We agree that *Brink*'s reasoning applies to this case. It is not the amount of fees that Edward Jones charged Plaintiffs that renders those fees immaterial. Instead, the fees are immaterial because the Second Amended Complaint alleges that Plaintiffs did not buy or sell any covered securities because Edward Jones switched them to fee-based accounts. Nowhere do Plaintiffs allege that they would have purchased or sold different covered securities had Edward Jones conducted a suitability analysis, which might have resulted in Plaintiffs remaining in commission-based accounts. Edward Jones's purported lack of suitability analysis is less material to the trading of covered securities than the brokers' actions in *Brink* and the other fees cases. The fees in *Brink* were paid each time the broker bought or sold a security. Here, Plaintiffs paid a fee "regardless of the transactions" Edward Jones took on their behalf.

Even if we look to the Rule 10b-5 portion of the complaint, Plaintiffs do not allege that their trading strategies would have changed. Indeed they claim just the opposite. Plaintiffs allege that, after transferring to fee-based accounts, Plaintiffs' "buy-and-hold philosophy remained unchanged." Plaintiffs do allege that "[t]he commission-based/fee-based dichotomy is critical and *material* to any investment decision," but the only example they give is their decision "to transfer . . . from commission-based accounts into fee-based accounts." Plaintiffs inform us that they "do not allege in their fiduciary [duty] claims that . . . Edward Jones's conduct" caused them to change their trading behavior. Again, Plaintiffs point to no instance where they would have traded covered securities differently had Edward Jones conducted a suitability analysis. The lack of modification of Plaintiffs' investment strategies suggests that the lack of suitability analysis did not materially affect the purchase or sale of any covered securities. *Cf. Fleming*, 878 F.3d at 1156 (holding that the claim met the "in connection with" requirement when the plaintiffs' "allegations make clear that if Schwab had not misled Plaintiffs into believing that Schwab would obtain the best prices for Plaintiffs' trades, Plaintiffs would not have made those trades").

In *Freeman*, we did connect the particular fees at issue with the purchase or sale of covered securities. We held that the "excessive cost of insurance charges" was "in connection with" the purchase or sale of a security because "[e]ach inflated charge . . . depletes the value of the investment." *Freeman*, 704 F.3d at 1114, 1117. We wrote that "[a] fund subject to higher fees and charges will, over time, have a lower value than a fund subject to more modest charges." *Id.* at 1117. However, we decided *Freeman* before the Supreme Court handed down *Troice*, and nowhere did we cite a

materiality requirement. We only required that there be "more than some tangential relation to the securities transaction." *Id.* at 1116 (citation and internal quotation marks omitted).[7]

Additionally, in *Freeman*, "[e]very time [the insurance company] collected the allegedly inflated cost of insurance charge, it sold securities to generate the funds." *Id.* at 1118; *see also Behlen v. Merrill Lynch*, 311 F.3d 1087, 1094 (11th Cir. 2002) (deciding that fees "were an integral part of the transactions" where "the very reason [plaintiffs] were sold the Class B shares was *because* those shares were subject to the excess fees and commissions"). That is not the situation here. There is no allegation that Edward Jones bought or sold securities to generate the fees that Plaintiffs owed after switching to fee-based accounts.

### ii. Choice of Broker

Plaintiffs allege that they changed their investment behavior in one sense after switching to fee-based accounts: they closed their accounts. In effect, they left Edward Jones and found a new broker.

Choosing a broker or specific type of account is fundamentally different than choosing to buy or sell a covered security. "[T]he choice of a type of investment account, much like the choice of a broker-dealer, is not intrinsic to the investment decision itself." *Brink*, 892 F.3d

---

[7] Further supporting the notion that *Troice* changed the landscape for the fees cases are examples of other courts holding, pre-*Troice*, that fees were "in connection with" the buying and selling of covered securities. *See, e.g.*, *Rowinski*, 398 F.3d at 303; *Dommert v. Raymond James Fin. Servs., Inc.*, No. CIV A. 1:06-CV-102, 2007 WL 1018234, at *11 (E.D. Tex. Mar. 29, 2007).

at 1148–49; *see also SEC v. Goble*, 682 F.3d 934, 943 (11th Cir. 2012) (interpreting the materiality requirement under § 10(b) "to mean an investment decision—not an individual's choice of broker-dealers"); *accord Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1103 (S.D. Cal. 2000) (holding that SLUSA's "in connection with" requirement was not met because the "defendant's conduct had nothing to do with the trading of any particular security . . . but merely involved the relationship between Schwab and its customers").[8]

Edward Jones is correct that Plaintiffs argued to the district court that they "would have looked elsewhere for investment advisory services" had Edward Jones disclosed that they failed to conduct a suitability analysis. Closing an investment account is not equivalent to buying or selling a covered security. SLUSA bars only class actions for claims that are "in connection with" the latter.

### iii. Best Execution

Edward Jones draws our attention to a series of cases involving the duty of best execution. A violation of such a

---

[8] As with fees, some pre-*Troice* cases held that a broker-investor relationship satisfied the "in connection with" requirement. *See, e.g.*, *Rowinski*, 398 F.3d at 303 ("[T]he action arises from the broker/investor relationship, the 'very purpose' of which is 'trading in securities.'" (citation omitted)). *Rowinski*'s holding is in contrast to the post-*Troice* cases, such as *Brink*.

The First Circuit recently decided that the choice of an asset transition manager was material, but that court specifically distinguished brokers. *See McLellan*, 959 F.3d at 462. The asset transition manager's misrepresentations "concerned the costs of the trades themselves," and not "ancillary facts about [brokers'] businesses, such as the nature of a processing fee and the financial state of the firm." *Id.*

duty occurs when a broker "directs large blocks of its clients' trade orders to . . . pre-determined trading venues where [the broker] will maximize kickback revenue." *Lewis v. Scottrade, Inc.*, 879 F.3d 850, 854 (8th Cir. 2018) (internal quotation marks and citation omitted). We decided that "[a] broker's fraudulent claim that it is able to provide best execution can surely be material to the client's decision to trade." *Fleming*, 878 F.3d at 1156; *see also Lewis*, 879 F.3d at 853. Breaching the duty of best execution is "in connection with" the purchase or sale of a covered security because "if [the broker] had not misled Plaintiffs into believing that [it] would obtain the best prices for Plaintiffs' trades, Plaintiffs would not have made those trades." *Fleming*, 878 F.3d at 1156.

Again, Plaintiffs' allegations do not relate to the purchase or sale of any particular security, or even any group of securities. *Cf. McLellan*, 959 F.3d at 463 ("[T]here need not 'be a misrepresentation about the value of a particular security in order to run afoul of [§ 10(b)].'" (quoting *Zandford*, 535 U.S. at 820)). The fees affect the net value of Plaintiffs' assets stored in an Edward Jones account, but the fees as alleged do not affect the net price of buying or selling securities for that account. Because the purported lack of a suitability analysis does not affect the price of any security when it is bought or sold, Plaintiffs do not allege that they "would not have made [certain] trades," as in *Fleming*. 878 F.3d at 1156.

### iv. Edward Jones's Other Arguments

Edward Jones highlights two paragraphs of the fiduciary duty claims in the Second Amended Complaint to try to show that Plaintiffs are alleging that the purported lack of suitability analysis relates to the buying or selling of securities, not just the choice of account or brokerage firm.

First, Edward Jones calls attention to the following allegation:

> Although Edward Jones may have exercised some trades in Lead Plaintiffs' and Class members' fee-based accounts, these additional trades ("Phantom Trades") were not made with any real analysis, nor made to enhance the value of the fund's assets, but to give the appearance that Edward Jones was managing the fee-based account in a deceptive effort to justify its fees it now "earned" as a percentage of the accounts' assets.

This specific allegation appears to be irrelevant to Plaintiffs' fiduciary duty claims. We gather that Plaintiffs are attempting to show how Edward Jones wanted to justify its recommendation to switch to fee-based accounts after the switch took place. Plaintiffs' fiduciary duty claims are based on the allegation that the switch itself was improper without a suitability analysis. Once Edward Jones allegedly failed to conduct a suitability analysis, and made a recommendation without that analysis, causing Plaintiffs to switch accounts, the breach of fiduciary duty would be complete. This paragraph in Plaintiffs' Second Amended Complaint perhaps provides context to their claim, but "complaints are often filled with more information than is necessary." *LaSala v. Bordier et Cie*, 519 F.3d 121, 141 (3d Cir. 2008). "[T]he inclusion of such extraneous allegations does not operate to require that the complaint must be dismissed under SLUSA." *Id.*; *cf. In re Charles Schwab Corp. Secs. Litig.*, 257 F.R.D. 534, 551 (N.D. Cal. 2009) ("True, those

allegations are incorporated by reference into the state claims but are really irrelevant thereto.").**⁹**

Second, Edward Jones points to Plaintiffs' allegation that when they moved from commission-based to fee-based accounts, it was done "through the sale of the[] assets" in Plaintiffs' accounts. Though Edward Jones did not highlight this allegation in its brief, at oral argument, counsel for Edward Jones contended that this allegation shows that Plaintiffs' allegations are "in connection with the purchase or sale of . . . a covered security." *Northstar*, 904 F.3d at 828.

We note that this phrase appears a single time in the complaint, in a parenthetical, and in a paragraph devoted to alleging that Edward Jones did not conduct a suitability analysis. It is not at all clear what this phrase means. Anderson alleges that Edward Jones "moved his assets into" a fee-based account. Other Plaintiffs allege the same. Plaintiffs often refer to how Edward Jones "transferr[ed] . . . clients' assets from commission-based accounts to" fee-based accounts, but Plaintiffs do not allege that they bought or sold different assets in those fee-based accounts. Additionally, Edward Jones does not point to any evidence in the record to prove that it sold any covered securities on Plaintiffs' behalf after they transferred to fee-based accounts. From the face of the complaint, and "constru[ing] the pleadings in the light most favorable to" Plaintiffs, *id.* (citation and internal quotation marks omitted), this single

---

**⁹** Additionally, Plaintiffs make clear in the Rule 10b-5 portion of the complaint that "to the extent Edward Jones ever performed a suitability review of Lead Plaintiffs, it performed such review only in connection with trades made *after* it had transferred Lead Plaintiffs'" assets to fee-based accounts.

phrase does not show that there was a material connection between the alleged lack of suitability analysis and the "purchase or sale of . . . a covered security," *id.*[10]

---

[10] Additionally, although the Second Amended Complaint does not show that the SLUSA class action bar applies because of this parenthetical, our independent review of the record indicates that, at least in theory, Edward Jones had the ability to purchase or sell securities on Plaintiffs' behalf *after* Plaintiffs transferred to fee-based accounts. Edward Jones clients purportedly signed an agreement before transferring to fee-based accounts that suggests that Edward Jones distinguished between certain types of securities that could be held in commission-based accounts and in fee-based accounts. The agreement provides that "[i]f the Client transfers into the [fee-based] Account marketable securities that are not" permitted in a fee-based account, then that "Client . . . directs Edward Jones . . . to promptly sell those securities . . . ." A client also "agree[d] that it has determined to participate in the [fee-based account] and to direct the sales of those securities not otherwise on the Program List," *i.e.*, the list of funds that Edward Jones permitted a client to hold in a fee-based account. Even if Edward Jones sold some of Plaintiffs' securities after the transfer to the fee-based accounts, Edward Jones has not shown that the alleged lack of suitability analysis was "in connection with" the purchase or sale of the securities for two reasons.

First, similar to the "phantom trades" argument, Plaintiffs' fiduciary duty claim is based on the alleged lack of suitability analysis, not on post-transfer sales of securities. Once Plaintiffs agreed to transfer to fee-based accounts, allegedly because Edward Jones did not conduct a suitability analysis, the purported breach of fiduciary duty is complete. Actions Edward Jones took after the breach, such as selling securities as part of the transfer of assets into the fee-based accounts, are extraneous to the alleged state law violation.

Second, as outlined above, Plaintiffs' complaint is premised on their "choice of a type of investment account," which "is not intrinsic to the investment decision itself." *Brink*, 892 F.3d at 1148–49. The alleged lack of suitability analysis might have caused Plaintiffs to choose fee-based accounts, but, unlike in *Fleming*, Plaintiffs do not allege that they

Finally, Edward Jones contends that it "did, in fact, perform a suitability analysis, as demonstrated by the documents considered by the district court." The district court stated, only when discussing the Rule 10b-5 claim, that the "questionnaires were part of the suitability analysis [Edward Jones] conducted . . . further undermining Plaintiffs' allegations that [Edward Jones] did not conduct a suitability analysis." *In re Edward D. Jones*, 2019 WL 5887209, at *5 (citation and internal quotation marks omitted). Whether Edward Jones did or did not conduct a suitability analysis is a question pertaining to the substance of the fiduciary duty claims. At this stage, we decide only whether the district court had jurisdiction over those claims pursuant to SLUSA. We must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," the Plaintiffs. *Northstar*, 904 F.3d at 828 (citation and internal quotation marks omitted). Plaintiffs' Second Amended Complaint alleges that Edward Jones failed to conduct a suitability analysis. A defense that the questionnaires did amount to such an analysis might succeed at a later stage of the litigation, but not at this jurisdictional juncture.

---

"would not have made those trades" that occurred after the switch to the fee-based accounts. *Fleming*, 878 F.3d at 1156. They tell us the opposite. Plaintiffs do not allege that they changed their trading behavior at all; they allege only that they would not have switched to fee-based accounts. The alleged lack of suitability analysis must "make[] a significant difference to [Plaintiffs'] decision to purchase or to sell a covered security." *Troice*, 571 U.S. at 387. The alleged lack of suitability analysis might have made a significant difference to the decision to move to fee-based accounts, but Plaintiffs have not alleged that it made a significant difference in any decisions to purchase or sell securities. Their "buy-and-hold philosophy remained unchanged."

## IV.  CONCLUSION

We hold that SLUSA does not bar bringing the state law fiduciary duty claims as a class action in Plaintiffs' Second Amended Complaint.  Plaintiffs claim that Edward Jones breached its fiduciary duties under Missouri and California law by failing to conduct a suitability analysis.  Plaintiffs allege that this lack of suitability analysis caused them to move their assets from commission-based accounts to fee-based accounts, which was not in their best financial interest as low-volume traders.  Because the alleged failure to conduct a suitability analysis was not material to the decision to buy or sell any covered securities, Plaintiffs' state law claims are not based on alleged conduct that is "in connection with" the purchase or sale of any covered securities.  SLUSA requires that all five elements outlined by this court be met if a class action is to be barred.  *See Northstar*, 904 F.3d at 828.  Because Plaintiffs' state law claims do not meet the fourth requirement,[11] we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

---

[11] Because we decide that Plaintiffs' claims are not "in connection with the purchase or sale of a covered security," 15 U.S.C. § 78bb(f)(1)(A), we need not analyze Plaintiffs' other contention that the lack of suitability analysis was not a misrepresentation or omission for the purposes of SLUSA.  *See Banks*, 929 F.3d at 1055.